IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **ROMARY ASSOCIATES, INC.,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**KIBBI, LLC, et al.,** )<br>)<br>**Defendants,** ) | Case No: 1:10-cv-376 |

## OPINION AND ORDER

Before the Court is Plaintiff Romary Associates, Inc.'s Motion to Amend Protective Order (Docket # 64), requesting that the Court modify the Stipulated Protective Order proposed by the parties and approved and adopted by this Court on February 3, 2011 (Docket # 31, 32). Now, Romary wants to include a "Highly Confidential—Outside Attorneys' Eyes Only" category that limits disclosure of certain "strategic" discovery materials to attorneys of record and prevents disclosure to Defendants' officers and employees. Defendants filed a response in opposition to Romary's motion (Docket # 65), and Romary timely replied (Docket # 66); therefore, the motion is now ripe for ruling.

For the following reasons, Romary's motion to amend the Stipulated Protective Order will be DENIED.

### *A. Procedural Background*

Romary developed and markets a mobile banking concept called "the Bankroll," which is essentially a little branch bank attached to the chassis of an RV. (Compl. ¶¶ 15-29.) Defendants specialize in building custom coaches and trailers. (Compl. ¶ 14.) In 2004, Romary approached Defendants about producing the Bankroll, and in connection therewith, Charles McKibbin

signed a non-disclosure agreement, ostensibly on behalf of all Defendants. (Compl. ¶¶ 14, 20, Ex. A.)      Romary contends that Defendants later violated the terms of the non-disclosure agreement by disclosing Romary's mobile banking concept and design; the Bankroll prototype; and its business, pricing, and marketing plans. (Compl. ¶¶ 20, 21.)  As a result, on October 27, 2010, Romary filed this suit against Defendants, advancing claims of patent infringement, unfair competition, breach of contract, tortious interference with business relationships, and misappropriation of trade secrets. (Docket # 1.)

This Court conducted a scheduling conference on January 10, 2011, establishing a discovery deadline of January 17, 2012. (Docket # 27, 28.)  On February 3, 2011, the parties filed a Joint Motion for Entry of Stipulated Protective Order, and the Court granted the motion and approved and adopted the Stipulated Protective Order proposed by the parties. (Docket # 31, 32.)  More than ten months later, on December 13, 2011, Romary filed the instant motion seeking to amend the Stipulated Protective Order. (Docket # 64.)

### B.  Applicable Legal Standard

"Just as good cause is required to enter a protective order, good cause is also required to modify a protective order." *Braun Corp. v. Vantage Mobility Int'l, LLC*, 265 F.R.D. 330, 332 (N.D. Ind. 2009) (citing *Murata Mfg. Co. v. Bel Fuse, Inc.*, 234 F.R.D. 175, 179 (N.D. Ill. 2006)).  "The party seeking to modify the protective order has the burden of demonstrating that good cause exists." *Id.* (citing *Murata*, 234 F.R.D. at 179).  "This burden is especially high where a protective order is agreed to by the parties before its presentation to the court." *Id*. (citing *SmartSignal Corp. v. Expert Microsystems, Inc.*, No. 02 C 7682, 2006 WL 1343647, at *2 (N.D. Ill. May 12, 2006)).  "When deciding whether to modify a protective order, courts consider

the nature of the protective order, foreseeability at the time of issuance of the modification requested, parties' reliance on the order, and whether good cause exists for the modification." *Id*. (citing *SmartSignal*, 2006 WL 1343647, at *2).

### C.  Analysis

In seeking the modification, Romary explains that at the time the parties entered into the Stipulated Protective Order, it was "dealing with data loss issues," and, as a result, its counsel was "unable to evaluate the depth and complexity of the information that Romary possessed." (Mot. to Am. Protective Order ("Mot. to Am.") 1.)  Since working with a technology professional, however, Romary has been able to retrieve a number of additional documents that are responsive to Defendants' discovery requests. (Mot. to Am. 2.)  These documents include the following information:

> (1) a market analysis of the domestic market for mobile banking vehicles; (2) databases of customer leads, which include the specific perceived needs of specific potential customers, along with the contact person; (3) a log of internet-based inquiries to Romary from potential customers, which indicate the specific interest and contact information for parties interested in mobile banking products; (4) strategic planning documents for sales of mobile banking products; (5) correspondence with customer leads; [and] (6) internal communications discussing marketing efforts and the receptiveness of specific individuals and entities to mobile banking products. (Collectively, "[S]trategic [P]ositioning [M]aterials").

(Mot. to Am. 2.)

Currently, the terms of the Stipulated Protective Order allow materials designated by counsel as "Confidential" to be shared with a party's officers and employees.  Romary argues, however, that these Strategic Positioning Materials are precisely the type of information that Defendants have purportedly misappropriated and used to Romary's detriment. (Mot. to Am. 2.) Consequently, to ameliorate its concerns about disclosing such sensitive information to

3

Defendants' officers and employees, Romary seeks to modify the Stipulated Protective Order to include a "Highly Confidential—Outside Attorney's Eyes Only" designation, which would restrict access to these Strategic Positioning Materials to solely Defendants' outside counsel. (Mot. to Am. 3.)  Defendants oppose Romary's requested modification, arguing, among other things, that Romary's present concern was foreseeable and that Defendants have relied upon the Stipulated Protective Order as written.

Applying the foregoing legal standard, it is clear that Romary has failed to carry its burden of establishing good cause for the modification.  First, as to the nature of the order, "that is, its scope and whether it was court imposed or stipulated to by the parties," it is a "blanket" protective order that was entered pursuant to a stipulation by the parties. *Murata*, 234 F.R.D. at 179.  "[W]here a protective order is agreed to by the parties before its presentation to the court, there is a higher burden on the movant to justify the modification of the order." *Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 597 (7th Cir. 1979); *see Murata*, 234 F.R.D. at 179 (explaining that "blanket" type of orders are "more difficult to modify or vacate when the parties have stipulated to them"); *see generally Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499, 503 (S.D. Iowa 1992) (discouraging a court's retroactive modification of a stipulated protective order, explaining that "[t]he obvious effect to such an approach to discovery would be to place a chill upon future stipulated confidentiality agreements," which "in turn would likely impede the processing of cases as the courts are called upon to rule upon countless motions under Rule 26").

Nevertheless, Romary argues that a modification is warranted because the need to restrict access to the Strategic Positioning Materials was not foreseeable at the time it entered into the Stipulated Protective Order.  That is, according to Romary, the data loss it was dealing with at

4

the time rendered its counsel "unaware of the nature and amount of strategic planning information in [its] possession." (Mot. to Am. 5.)  Once the data became available, it became apparent to Romary that additional protections needed to be put into place to prevent Defendants' officers and employees from taking undue commercial advantage of these sensitive documents. (Mot. to Am. 5.)

Romary, however, ostensibly was aware that at least *some* type of data loss issue existed at the time it was negotiating the Stipulated Protective Order, even though its counsel was unaware of the nature and amount of the Strategic Positioning Materials that Romary ultimately possessed. (*See* Mot. to Am. 1, 5; Reply Br. 4-5.)  Furthermore, the Strategic Positioning Materials appear to already be encompassed in the category of "Marketing Strategy Documents" included in the Stipulated Protective Order, which is defined as "Non-Public Materials containing information regarding any party's strategy or plans to improve or increase market share, or that disclose a party's strategies and methods of selling or marketing its products or services," or "Customer Lists," which "means documents showing a listing of those persons who have . . . been in contact with a party expressing an interest to purchase products or services from them." (Stip. Prot. Order ¶ 5.)

Moreover, the current Stipulated Protective Order has already been in place ten months. Defendants have produced thousands of pages of documents in discovery, including "correspondence with customers, contracts, financial documents, [and] design and manufacture documents," many of which were designated as "Confidential" under the terms of the Order. (Resp. Br. 12.)  In fact, Defendants represent that they have already completed their document production. (Resp. Br. 12); *see Jochims*, 145 F.R.D. at 503 ("To permit [plaintiff] to conduct

discovery under one set of rules and then have the court abrogate those rules after [plaintiff] has achieved [its] desired result would be to countenance discovery by ambush."). Therefore, Defendants have relied upon the Stipulated Protective Order as written, as "it is part of the landscape of this case." *Murata*, 234 F.R.D. at 180.

Furthermore, as Defendants emphasize, Romary seeks this modification on the eve of the close of discovery and the due date for the Defendants' expert reports. In that regard, Defendants represent that they need their business representatives to review the Strategic Positioning Materials to determine whether (1) Romary provided the information to Defendants in connection with the non-disclosure agreement; (2) Defendants used any of the information contained therein; (3) the information constitutes a trade secret or is generally known; and (4) Defendants had any communication with Romary's purported potential customers. (Resp. Br. 13.) Thus, to reiterate, in planning their litigation strategy, Defendants have relied upon their business representatives' ability to review Romary's discovery responses.

Finally, "good cause" in the context of modification of a protective order "implies changed circumstances or new situations." *Murata*, 234 F.R.D. at 180. "Not surprisingly, a party's oversight in not negotiating a provision in a protective order considering a matter which should have been reasonably foreseeable at the time of the agreement has been held not to constitute good cause for relief from the protective order." *Id*. As Defendants emphasize, this lawsuit arises from Romary's belief that Defendants misappropriated its confidential information, and, accordingly, any concern by Romary that Defendants would continue to do so "was present at the start of this litigation, and a designation of 'Highly Confidential' could have been negotiated at the outset." (Resp. Br. 14); *see, e.g.*, *Viskase Corp. v. W.R. Grace & Co.-*

6

*Conn.*, No. 90 C 7515, 1992 WL 13679, at *4 (N.D. Ill. Jan. 24, 1992) (denying plaintiff's motion for modification where plaintiff "should have anticipated and accounted for its present problem when it agreed to the Protective Order in the first place"). In short, Romary has failed to carry its burden of establishing good case for the requested modification, and its motion to amend the Stipulated Protective Order will be DENIED.

### D. Conclusion

For the foregoing reasons, Plaintiff's Motion to Amend Protective Order (Docket # 64) is DENIED.

SO ORDERED.

Entered this 6th day of January, 2012.

                                        s/Roger B. Cosby
                                        Magistrate Judge
                                        United States District Court